UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PORTIA BASS,

*Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS & COMPANY,

*Defendant-Appellee.*

No. 01-1073

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Jackson L. Kiser, Senior District Judge.
(CA-00-64-5)

Argued: October 30, 2001

Decided: January 10, 2002

Before WILKINS, LUTTIG, and GREGORY, Circuit Judges.

---

Affirmed in part and dismissed in part by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Tamika Chelsea Harris, Waynesboro, Virginia, for Appellant. James Moss Johnson, Jr., MCGUIRE WOODS, L.L.P., Charlottesville, Virginia, for Appellee. **ON BRIEF:** R. Craig Wood, MCGUIRE WOODS, L.L.P., Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case involves numerous claims by the appellant, Portia Bass, against her former employer, E.I. du Pont de Nemours & Co. (DuPont). The district court granted two separate motions to dismiss, and Bass has appealed both. We dismiss a portion of the appeal for lack of appellate jurisdiction, and affirm in all other respects.

### I.

Because of the procedural posture of the case, we assume the veracity of the following allegations. Bass is a 50 year-old African-American female who worked for DuPont for 15 years. She was DuPont's Global Lycra Toxic Substances Control Act (TSCA) Coordinator. Bass was demoted to a lesser position, and replaced in her former position by Nancy Deputy, a white woman under forty years of age. Though inexperienced and unqualified for the job, Deputy was given a superior compensation package. Bass complained of the demotion in a letter to management, which was disseminated to various managers. Bass was ridiculed by these managers because of the letter. Another manager, Susan Dahl, wrote a defamatory letter regarding Bass that was circulated to twelve corporate executives.

At some point after the demotion, Bass was ordered to resume her previous duties as TSCA Coordinator, but with the restriction that she was to have no contact with Nancy Deputy, who would also retain the position. Bass was also subjected to additional verbal abuse by co-employees, which she reported to two DuPont Vice Presidents.

As part of her job, Bass was required to ensure the accuracy of certain health and safety data. Because of the restrictions that were placed on her upon resumption of TSCA duties, Bass did not have

access to the information necessary to make accurate assessments of the data.

Bass alleges that she was consistently paid less than similarly situated white men. On May 10, 1999, Bass filed a discrimination complaint with the EEOC. On June 16, 1999, Bass was fired. This lawsuit ensued.

Bass's Complaint and First Amended Complaint alleged various nonspecific causes of action which the district court found could be broadly grouped as follows: (1) Title VII discrimination, retaliation, and hostile work environment, 42 U.S.C. § 2000e; (2) Equal Pay Act violations, 29 U.S.C. § 206(d); (3) a state law defamation claim; (4) a state law wrongful discharge claim, Va. Code § 40.1-51.2:1; (5) a state law spoliation of evidence claim; and (6) a state law tortious interference with due process claim. DuPont moved for dismissal of the wrongful discharge, defamation, spoliation of evidence, and tortious interference claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. DuPont also moved for summary judgment on the Equal Pay Act claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. In an order dated December 15, 2000, the district court granted DuPont's motion to dismiss and denied DuPont's motion for summary judgment.

On January 19, 2001, Bass filed her Second Amended Complaint, realleging the remaining claims and adding several new claims. The complaint contained eleven counts: Count I—Title VII race discrimination; Count II—age discrimination in violation of the Age Discrimination in Employment Act; Count III—Title VII sex discrimination; Count IV—wage discrimination in violation of the Equal Pay Act; Count V—Title VII retaliation; Count VI—Title VII hostile environment; Count VII—ADEA hostile environment; Count VIII—conspiracy in violation of 42 U.S.C. § 1985(3); Count IX—a *Bivens* claim; Count X—common law conspiracy to hinder pursuit of discrimination claim; and Count XI—common law conspiracy to destroy evidence. On March 19, 2001, the district court granted DuPont's motion to dismiss Counts VI through XI.

On March 19, 2001, the district court also granted Bass's motion for entry of judgment on the claims dismissed by the December 15

order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Bass did not move for a similar entry of judgment on the claims dismissed by the March 19 order.

Bass has appealed both the December 15 order and the March 19 order.

## II.

We must address a preliminary issue before reaching the merits of the appeal. DuPont has filed a motion to dismiss the appeal from the district court's March 19 order for lack of appellate jurisdiction. We agree that we do not have jurisdiction over that portion of the appeal.

Unlike the appeal from the December 15 order, entry of judgment has not been made on the claims dismissed by the March 19 order. Accordingly, the district court's decision as to these claims lacks finality under 28 U.S.C. § 1291. *See also* Fed. R. Civ. P. 54(b).

Bass argues that the March 19 decision is appealable under two exceptions to the finality requirement: pendent appellate jurisdiction and the *Cohen* collateral order doctrine. Neither of these exceptions applies.

*First*, Bass argues that we have discretion to exercise pendent appellate jurisdiction over otherwise non-appealable orders that "are reasonably related to the appealable order when that review will advance the litigation or avoid further appeals." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 416 (4th Cir. 1999). In *Hoechst*, however, we noted that the viability of the doctrine of pendent appellate jurisdiction had been cast into some doubt by the Supreme Court's decision in *Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995). *See Hoechst*, 174 F.3d at 416.

In *Swint*, the Supreme Court, while not definitively settling whether the exercise of pendent appellate jurisdiction is ever appropriate, sharply limited its potential reach. The Court left open the possibility that pendent appellate jurisdiction might be appropriate if a court of appeals with jurisdiction over one ruling, conjunctively

reviews a related ruling that is "inextricably intertwined" with the appealable order, or if review of the otherwise non-appealable order is "necessary to ensure meaningful review" of the appealable order. *Swint*, 514 U.S. at 51. *See also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc); *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996) (citing *Swint*). Bass's appeal does not meet this test. While the claims dismissed by the two orders do arise out of the same set of alleged facts, the claims resolved by the December 15 order are easily separated from the claims resolved by the March 19 order. The claims involve different legal issues. *Swint*, 514 U.S. at 51. Indeed, it appears Bass argued as much in seeking partial entry of judgment pursuant to Rule 54(b). *See* Appellee's Motion to Dismiss the Appeal of Counts VI-XI for Lack of Jurisdiction, Ex. A.

*Second*, the *Cohen* collateral order doctrine does not provide a basis for jurisdiction over the March 19 order. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). *Cohen* authorizes jurisdiction only over "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint*, 514 U.S. at 42.

Bass's appeal fails to qualify. *First*, under Rule 54(b), the March 19 order remains subject to revision at any time before entry of judgment, and is therefore not conclusive. *Second*, the issues resolved by the March 19 order are not separate from the merits, they *are* the merits. *Third*, the March 19 order is clearly reviewable on appeal. DuPont's motion to dismiss Bass's appeal from the district court's March 19 order is therefore granted.

## III.

Remaining before us is the appeal from the December 15 order. We review a Rule 12(b)(6) dismissal *de novo*. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

A.

The first claim dismissed by the district court was Bass's wrongful discharge claim. Bass asserts that she has stated a cause of action under Va. Code § 40.1-51.2:1, which provides:

No person shall discharge or in any way discriminate against an employee because the employee has filed a safety or health complaint or has testified or otherwise acted to exercise rights under the safety and health provisions of this Title for themselves or others.

Bass's claim fails, however, because she has not exhausted her administrative remedies, as required by Virginia law. Va. Code § 40.1-51.2:2 provides a remedy for violations of Va. Code 51.2:1, stating:

Any employee who believes that she has been discharged or otherwise discriminated against by any person in violation of § 40.1-51.2:1 may, within thirty days after such violation occurs, file a complaint with the Commissioner alleging such discharge or discrimination. Upon receipt of such complaint, the Commissioner shall cause such investigation to be made as he deems appropriate . . . . (B) Should the Commissioner, based on the results of his investigation of the complaint, refuse to issue a charge against the person that allegedly discriminated against the employee, the employee may bring action in a circuit court having jurisdiction over the person allegedly discriminating against the employee, for appropriate relief.

Under Virginia law, "[when] a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *School Board v. Giannoutsos*, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989); *see also Vansant & Gunsler, Inc. v. Washington*, 245 Va. 356, 360, 429 S.E.2d 31, 33 (1993) (same). *See Judy v. Nat'l Fruit Product Co., Inc.*, 40 Va. Cir. 244, 245 (City of Winchester 1996) (holding that Va. Code § 40.1-51.2:2 provides an exclusive remedy for violations based on Va. Code § 40.1-51.2:1). Accordingly, Bass must satisfy the requirements of

Va. Code § 40.1-51.2:2 before initiating a lawsuit. Because she has not done so, her claim was appropriately dismissed.

### B.

The district court also dismissed Bass's defamation claim. As the district court held, this claim is barred by the applicable statute of limitations. The limitations period for defamation in Virginia is one year. Va. Code § 8.01-247.1. The defamatory letter was published on August 10, 1998; this lawsuit was filed on August 7, 2000, almost a full year after the limitations period had run. Bass seeks to avoid the consequences of the statutory limitations period by arguing that we should apply a discovery rule. The Virginia General Assembly has declined to adopt a discovery rule in defamation actions. Va. Code § 8.01-230 provides that a "right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting damage is discovered." The statute then enumerates specific exceptions to the accrual rule. The defamation statute of limitations is not among the listed exceptions. *See Jordan v. Shands*, 255 Va. 494, 498 (1998) ("Any cause of action that the plaintiff may have had for defamation against any of the defendants accrued on . . . the date she alleges . . . that the defamatory acts occurred.").

### C.

The third claim dismissed by the district court was Bass's spoliation of evidence claim. The district court correctly held that Virginia does not recognize a tort based on spoliation of evidence. *See Austin v. Consolidated Coal Co.*, 256 Va. 78, 82, 501 S.E.2d 161 (1998) (declining to recognize the tort in case of the employer's spoliation of evidence important to an employee's suit against third parties). In *Austin*, the Virginia Supreme Court did not specifically address whether Virginia would recognize the tort in the context of an employer's spoliating evidence of an employee's claim against the employer itself. As the district court recognized, however, there is even less reason to permit the tort in such a context. When the spoliator is the potential defendant in the case for which evidence was destroyed, the courts typically have ample alternate remedies in the form of fines, costs, adverse jury instructions, evidentiary presump-

tions, and default. *See, e.g.,* Va. Sup. Ct. R. 4:12; Fed. R. Civ. P. 37. We think that Virginia would not recognize the tort of spoliation of evidence in the circumstances presented by this case.

### D.

The fourth and final claim dismissed by the district court was Bass's claim that DuPont tortiously interfered with her due process rights during the EEOC investigation. This claim fails for at least two reasons. *First*, claims of tortious interference in Virginia have been limited to contractual settings. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985); *see also Economopoulos v. Kolaitis*, 259 Va. 806, 815, 528 S.E.2d 714 (2000) (finding no claim for tortious interference with inheritance expectancy); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1121 (4th Cir. 1995) (no claim under Virginia law for tortious interference with an irrevocable license); *Douglas v. Lancaster Community College*, 990 F. Supp. 447, 467 (W.D. Va. 1997) (no claim under Virginia law for tortious interference by employee against employer with decisions in the employment relationship). *Second*, no rights of Bass's have been interfered with because "due process considerations do not attach to the EEOC investigative process." *Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979).

### IV.

We therefore conclude that the district court's December 15 order should be affirmed, and we dismiss the appeal from the March 19 order.

*DISMISSED IN PART AND AFFIRMED IN PART*